Jerry Green v. The State.

No. 3836. Decided May 13, 1908.

1.—Local Option—Evidence—Refreshing Witnesses' Memory—Written Statement—Grand Jury—Cross-Examination.

Upon trial of a violation of the local option law, where the State's witness denied his ability to testify to any sale of whisky or other liquid containing intoxicating liquor as having been made by the defendant, it was reversible error to permit said witness to refresh his memory from a written memoranda handed him by the State's counsel, alleged to be a statement of the witness before the grand jury, without permitting defendant's counsel upon his request to see and examine what its contents were and whether it was such as would refresh the memory of the witness in respect to the particular matter inquired about; and thereupon permit the witness to testify that one of the transactions he had with defendant was a sale of intoxicating liquor; and this although State's counsel claimed that the memoranda contained other matter given as evidence before the grand jury.

2.—Same—Evidence—Testing Memory of Witness—Drunkenness.

Where a witness undertakes to give a statement of his observations, etc., and transactions to which he is a party, his condition of mind as affected by drunkenness or sobriety may be inquired into.

**3.—Same—Jury and Jury Law—Jury Commissioners.**

Where upon trial of a violation of the local option law the defendant objected to the jury because it had not been selected by the jury commissioners, and it was shown that at the time the jury commissioners were selecting jurors for the term of the county court at which defendant was afterwards tried, the county judge purposely instructed the jury commissioners to select the jurors for three weeks of said term only, believing that the business could be disposed of in that time; but after holding court for three weeks found that he could not do so, there was no error that he instructed the sheriff to summon and select the jury for the fourth week, during which defendant was tried, no injury to defendant being shown. Distinguishing White v. State, 45 Texas Crim. Rep., 597.

**4.—Same—Charge of Court—Charges Requested.**

Where upon trial of a violation of the local option law the charge of the court was sufficient, and the charges requested by the defense were upon the weight of the evidence, the latter were correctly refused, and there was no error.

Appeal from the County Court of Brown. Tried below before the Hon. A. M. Brumfield.

Appeal from a conviction of a violation of the local option law; penalty, a fine of $100 and sixty days confinement in the county jail.

The opinion states the case.

*Harrison & Wayman,* for appellant.—On question of refreshing witness' memory by memorandum, cases cited in opinion. On question of quashing venire, cases cited in opinion.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—Appellant was convicted in the County Court of Brown County on January 29, 1908, of selling intoxicating liquors in said county in violation of the local option law, and his punishment was assessed at a fine of $100 and sixty days confinement in the county jail. He has brought the case to this court and presents as grounds for reversal several very interesting questions.

1. The first assignment of error relied upon by appellant for reversal of the cause is that "the court erred in refusing to let defendant's counsel see a certain paper claimed to have been a statement made by the prosecuting witness before the grand jury which said statement was exhibited to and examined by said McGarity while a witness on the stand." The defendant's counsel stated to the court at the time that he desired to examine said paper and statement for the purpose of cross-examining said witness. The proposition asserted under this assignment of error is that "when the memory of a prosecuting witness, while on the stand is refreshed on a material point by a paper put in his hands and examined by him, the adverse party has the right to see such paper for the purpose of cross-examining the witness, and to deny this right is a reversible error." In order to pass upon this question intelligently a brief statement is necessary. The only witness produced by the State, or for that matter, the only witness sworn for the State or appellant was Jim McGarity. On his direct examination he testified

that on January 5, 1908, he went to the club room of one Jim Byrd on East Baker street and that appellant was in there and was waiting on the trade, and that there was a negro behind the counter helping him; that shortly after he went in, the appellant gave him a drink of whisky for which he did not pay anything but that same was a gift; that after that he bought six or seven glasses of soda water from the appellant, and from the negro porter who was assisting in the club room; that as well as he remembered, after the drink of whisky was given him, the next drink he got was a drink of soda water; that after that he does not remember from whom he got the soda water but that he does know that he got one other from the appellant, and a number from the negro; that for each of these glasses of soda water he paid 20 cents; that from all he got he knows he got pretty full, but that he could not state whether or not either of the drinks of soda water he got from the appellant and for which he paid him, had anything intoxicating in it, but that all he knows about it is that all he got made him pretty full. On cross-examination he testified as follows: That he could not say that any particular drink that he got from the appellant had intoxicating liquor in it, except the one appellant gave him and for which he did not pay him anything; that as well as he knows each of them may or may not have had whisky in them; that his memory is not clear on this point; that as to fixing any particular drink and saying it had whisky in it or other intoxicating liquor, he could not do it. This closed the cross-examination. After this, the county attorney exhibited to the witness a paper, which he stated at the time to be the record of said prosecuting witness' evidence before the grand jury, and after this the witness testified that he could not say whether or not the first drink of soda water had intoxicating liquor in it, but that he now would state that the second glass of soda water that he got from the appellant did have intoxicating liquor in it, and that he had paid the appellant 20 cents for this glass. In connection with this matter it appears from the bill of exceptions reserved at the time and duly approved by the court, that appellant's counsel asked that he be permitted to see the statement so exhibited to said witness, to the end that he could properly cross-examine him relative to same. The county attorney thereupon stated that the statement contained other evidence given before the grand jury of other transactions with other and different parties and for that reason objected to appellant's counsel seeing the same, and thereupon the court stated that he would not require the county attorney to show said instrument *or any part thereof* so exhibited to said witness to appellant's counsel, nor would the county attorney do so. It is recited in the bill as a fact that appellant's counsel did not see said instrument or know the contents of same while cross-examining said witness or while he was a witness on the stand in this case. We think this action of the court was erroneous. While it has been held, and is well settled, that a witness may be permitted and allowed to examine records and memoranda made by him in respect to any transaction about which he is

called on to testify, which may or does so refresh his recollection, there would seem to be no reason why, when he has so refreshed his memory by reference to such memoranda or writing, the party adverse to him should be shut off from an examination of the memoranda so produced—denied the right to inspect same and to ascertain, in the first place, as to whether it is such paper as does or should refresh the witness' memory, and as to whether or not the matters contained in it are in accord with the testimony given by the witness orally on the stand. In the case of State v. Bacon, 98 Am. Dec., 616, almost this identical question arose. It appears from the statement in that case that on the trial the prosecution introduced one Kellogg as a witness who, during his examination in chief, referred to his pocket memorandum to refresh his memory. On cross-examination he refused to allow the respondent's counsel to examine it on the ground that it contained private memorandum of his acts of a public nature as a detective, and that he could not submit it to an examination without a breach of confidence and a personal injury. The court in that case was requested to direct the witness to allow the examination, but the request was refused, to which the respondent excepted. The opinion in that case is so clear and expresses so well our views that we make this liberal excerpt: "On the trial the witness was at liberty to refer to the memorandum, on the ground that it aided his memory in respect to the subject of inquiry involved in the prosecution, and to which his testimony related. This is allowed to enable the witness to testify with more precision and accuracy than he otherwise could, and proceeds upon the ground that the memory is often at fault and imperfect. An entry or memorandum, therefore, made by the witness himself, at or near the time of the transaction in question, and before it has in any degree faded from his memory, which is full and complete, so as naturally to suggest and aid the mind in recalling what really transpired, is a strong ground of reliance and belief. It would therefore seem that it is a legitimate subject of inquiry and examination with reference to a witness referring to entries on the stand, for the purpose of refreshing his recollection, whether the memorandum thus used and referred to really does assist his memory or not. That must depend in some measure upon its character, and that can be ascertained only by an inspection and cross-examination in respect to it; as when and by whom made, its appearance, genuineness, fullness, and faithfulness. Text-writers treating the subject seem to entertain this view: 'If the memory of the witness is refreshed by a paper put into his hands, the adverse party may cross-examine the witness upon that paper.' 1 Greenl. Ev., sec. 476. 'It is always,' says Phillips (vol. 1, p. 289), 'and very reasonable when a witness speaks from memoranda that the counsel should have an opportunity of looking at them when he is cross-examining the witness'; and Starkie (vol. 1, p. 179), asserts the same doctrine. He remarks: 'The witness may be cross-examined from it.' See also part 1, Cowen and Hill's Notes, 2d ed., 757; Rex v. Ramsden, 2 Car.

& P. 603; S. C., 12 Eng. Com. L. 758. The view as presented by these authorities is alone consistent with the party's right to cross-examine the witness upon whose credibility the question in issue somewhat depends, and which, it is said, constitutes a 'strong test, both of the ability and willingness of the witness to declare the truth.' · In no other way can his accuracy and recollection be ascertained and tested, which in all cases are proper matters of inquiry with a view to weighing his evidence, and the range of inquiry is open to this extent. And a witness cannot deprive a party of this right, or shield himself from the obligation of disclosing the whole truth to this end, or refuse the production and examination of a memorandum which is in court, and upon which he relies and refers, for the reason disclosed by this case; certainly not, unless it appears to the court that he had a reasonable ground of belief that he would subject himself to personal injury in consequence of producing and allowing an examination of it. This decision of the recorder was therefore incorrect." In the notes to this decision Mr. Freeman, the learned compiler of that justly celebrated series, has this note containing a statement of the decisions in respect to this matter: "In cases of this kind, where the witness has no independent recollection of the facts, and depends upon his knowledge that the memorandum used by him is correct, it must be produced. The writing or memorandum must be delivered to the opposite party for his inspection, that he may cross-examine the witness in regard to it, and it may be shown to the jury, not for the purpose of establishing the facts therein contained, but for the purpose of showing that it could not properly refresh the memory of the witness. The necessity of producing the memoranda, and the reasons which require its production, are very clearly and fully set forth in the principal case, and need not be further stated here. The writing, however, does not thus become evidence by being thus produced, nor need it be such a paper as would be admissible, for it is not the paper that is evidence, but the recollection of the witness. These views are clearly supported by Wernwag v. Chicago, etc., Ry. Co., 20 Mo. App., 473; Davis v. Field, 56 Vt. 426; Acklen v. Hickman, 63 Ala., 494; Memphis, etc., R. R. Co. v. Maples, 63 id., 601; State v. Collins, 15 S. C., 373; Commonwealth v. Jeffs, 132 Mass., 5; Castello· v. Crowell, 133 id., 352; Kent v. Mason, 1 Ill. App., 466; Shriedley v. State, 23 Ohio St., 130; Erie Preserving Co. v. Miller, 52 Conn., 444; Seavy v. Dearborn, 19 N. H., 351; Webster v. Clark, 30 id., 245; Watts v. Sawyer, 55 id., 38; State v. Colwell, 3 R. I., 132; Green v. Caulk, 16 Md., 556; Burrough v. Martin, 2 Camp., 112; Burton v. Plumer, 2 Ad. & E., 343; Jacob v. Lindsay, 1 East, 460; Maughan v. Hubbard, 8 Barn & C., 400; Kennsington v. Inglis, 8 East, 272; Rex. v. St. Martins, 2 Ad. & E., 215; Sinclair v. Stevenson, 1 Car. & P., 582; Lloyd v. Freshfield, 2 id., 325; Wise v. Phœnix Ins. Co., 4 N. E. Rep., 634; Lawson v. Glass, 6 Col. 134; Howard v. McDonough, 77 N. Y., 592; State v. Miller, 53 Iowa, 154; S. C., 53 id., 209; Cooper v. State, 59

Miss., 267; Clough v. State, 7 Neb., 320; McCauseland v. Ralston, 12 Nev., 195; 1 Greenl. Ev., sec. 437." See also People v. Lyons, 49 Mich., 79; Duncan v. Sealey, 34 Mich., 369; Mfg. Co. v. Platt, 83 Mich., 419. It will be seen that some of the authorities cited above go to the extent of holding that the right of the adverse party to an inspection of any memorandum produced on the trial, to refresh the memory of a witness, is based upon the ground that they have a right to know whether it is such a memorandum as could, in the nature of things, refresh such witness' memory. It is often, we believe, impossible for counsel to intelligently continue a cross-examination of a witness in the absence of an inspection of the memorandum, or writing which is claimed to have the effect of refreshing the memory of the witness and make clear that which hitherto had been doubtful. It is the duty of a party and every party in every case to have, so far as the rules of evidence permit, the most unrestricted right to ascertain and develop the truth in respect to any contested matter. In this case the witness denied his ability to testify to any sale of whisky or other liquid containing intoxicating liquor as having, in fact, been made by the appellant and under the testimony, as developed, both on direct and on cross-examination, the jury would have been well justified in holding that the evidence was not of that conclusive character that would justify a conviction. In this condition of the case counsel produces a document which he states was a statement of the witness before the grand jury. The nature, character, date and terms of this instrument are unknown to appellant's counsel. The court has not seen it and does not see it; what the contents are, when made, to what it relates, whether right or wrong, whether direct, positive or negative, no one knows, no one can tell. It is a sealed document. The witness says that on an inspection of the paper his memory is refreshed. Counsel for appellant, or for that matter the jury, are required to conclude, assume and admit that the paper does have such effect. If its terms were known and disclosed it might be that counsel would be justified in contending and the jury in believing that the nature and character of the paper was not such, as ought in fairness, or as would in fact, refresh the memory of the witness in respect to the particular matter inquired about. To hold in such case that there may be such private exhibition of a document in a court of justice, with no right of examination or inspection on the part of appellant's counsel, is to shut out the light and compel and require him to accept a statement of the witness probably hostile, and possibly unworthy of credit. We can not sanction such a rule. If the paper contained such matters of such grave import and importance concerning the witness, as that a disclosure of its entire purport would have injured him or embarrassed the State in other prosecutions it was not compelled to offer the paper. The appellant's right in the case at bar should not be hazarded and put in jeopardy for the mere reason that the possible effect of an exhibition of the paper might in some future case be injurious. But

in this case the bill of exceptions says that the court declined to admit counsel for the appellant to examine any part of the paper. Even, presumably, that part of it which referred alone to the very matter under investigation counsel for appellant was not permitted to see or examine. From whatever view we look at it, we think the action of the court can not be sustained.

2. The next assignment of error is that the court erred in refusing to permit appellant to show by the prosecuting witness McGarity that he, McGarity, was highly intoxicated and in a drunken condition as a result of having drunk the liquor which he testified he bought from the appellant, and to further show all the facts concerning said McGarity's drunken condition. It is the contention of appellant that it is always permissible to show that a witness was in a drunken condition at or about the time the transaction occurred about which he is testifying, for the purpose of testing the memory and capacity of the witness. The testimony admitted tended strongly to show that appellant was quite drunk, and we think contains intrinsic evidence that his inability to remember the precise facts was due to this condition. The bill as presented is not as full as might be desired but substantially we think sustains appellant's contention. We think the rule in any case should be, where a witness is produced and undertakes to give a statement of the facts coming under his observation, transactions to which he is a party and on which the guilt of a citizen is sought to be established, that with a view of testing the credibility of the witness, his opportunity for observation, the state of his memory, the condition of his mind and all that, that it should and would be proper to interrogate the witness as fully as might be necessary in respect to his condition of drunkenness or sobriety. The bill distinctly states that the testimony sought to be adduced in respect to the witness being drunk was for this purpose and this purpose alone. We think it should have been received and was unquestionably proper evidence. Lewis v. State, 33 Texas Crim. Rep., 618; State v. Greer, 41 Am. Rep., 296.

3. The next ground urged for reversal is the action of the court in overruling appellant's motion to quash the venire of jurors in this case and in requiring him to be tried before a jury selected by a deputy sheriff and not by a jury selected by a jury commission. In order that this matter may fully appear, we make the following statement from the record: "Appellant's counsel in their motion to quash the venire because the jurors tendered him were not chosen and selected by the jury commission in Brown County, Texas, as required by law, but the county judge of that county intentionally instructed them not to select a jury for the week of court on which the trial was had, being the fourth week of said term. Their contention was that none of the causes or conditions under which a sheriff is permitted under order of the court to summon a jury existed, and no ground existed as a basis for the sheriff to select a jury for the trial of this appellant. Testimony was taken on this motion and the following substantially is

the evidence. Judge A. M. Brumfield, county judge of Brown County, and the judge presiding over this court, testified that at the time the jury commissioners were selecting jurors for this term of county court, he purposely and intentionally instructed them to select jurors for three weeks of the term only, believing at the time that that would be enough jurors to dispose of the business at this term of court, but after holding court for three weeks, he found that there were still a number of civil and criminal cases to be tried, which he thought would justify him in having the sheriff select a jury for the fourth week, being the week during which this case was tried, and that thereupon he directed the sheriff on Monday of the fourth week to summon a jury. The deputy sheriff who was sworn testified in substance that as instructed by the county judge, he selected a jury, who resided in the City of Brownwood; that he made no effort to get men from the different parts of the county but selected jurors as he came to them, that is, he selected men whom he believed to be honest men and sober men. In this state of the proof the motion was overruled and appellant required to proceed to trial before a jury summoned by the sheriff. Article 3150 of our Civil Statues is as follows: "If from any cause the jury commissioners should not be appointed at the time prescribed or should fail to select jurors as required, or should the panels selected be set aside, or the jury lists returned into court be lost or destroyed, the court shall forthwith proceed to supply a sufficient number of jurors for the term under the provisions of this title, and may, when it may be deemed necessary, appoint commissioners for that purpose." Article 695 of the Code of Criminal Procedure is as follows: "When from any cause, there are no regular jurors for the week from whom to select a jury, the court shall order the sheriff to summon forthwith such number of qualified persons as it may deem sufficient, and from those summoned a jury shall be formed as provided in the preceding articles of this chapter." The two clauses of the civil and criminal codes quoted above were considered by this court in the case of Sanchez v. State, 39 Texas Crim. Rep., 389. That was a felony case. In that case the appellant made a motion to quash the venire for the reason among others that a jury had not been chosen and selected by the jury commission of said county, although such jury commission was appointed at the last term of the court who qualified and selected both grand and petit jurors for the term of court at which appellant was being tried. (2) Because he claimed that to force him to trial before a jury not selected by a jury commission is to deny him a trial by due course of law, and (3), because he claimed that he was at all times ready to go to trial during the preceding weeks of that term, when there was a jury chosen and selected. It appeared that the case was called and that there was no jury selected by the commission of Webb County where the prosecution was being conducted, and that no jury was in attendance upon the court whatever; that thereupon an order was made directing the sheriff to summon a jury for the trial of the case. In

discussing the question, the court in the Sanchez case clearly states that the requirement of article 3150 is not in any sense mandatory but states that the article in terms authorizes the judge of any district court when from any cause there has been a failure of the commission to provide a jury for the term, *or part of the term,* to order the sheriff to summon a jury for such term or part of a term. The conviction in the Sanchez case was sustained and appellant's contention with respect to the organization of the jury overruled. In the case of Lenert v. State, 63 S. W. Rep., 563, this question was considered by this court. In that case it was made to appear when the cause was called for trial and no jury being in attendance, and none having been selected by the jury commission, the court upon its own motion set the case for December 11, 1899, and immediately appointed three men possessed of the qualifications for jury commissioners, who thereupon selected twenty-four jurors for the 2nd week of the term of the court. In that case appellant objected to the jurors so selected and filed a motion to quash the venire on the ground there was no jury drawn at the last term of the court, nor were there any jury commission appointed by the court at any previous term to select the jury for this term; therefore no jury appeared and the court, on his own motion, on the first day of the term selected the jury commission to draw this jury for the purpose of trying this case. In that case counsel for Lenert made the objection that the venire should be quashed for the reason that the jurors were not summoned by the sheriff as required by article 695 of our Code of Criminal Procedure. In passing on the case, Judge Brooks says: "As contended by appellants. the proper practice would have been for the court to have had the sheriff summon the jurors; but appellants have shown no injury by the means and manner resorted to for the selection of the jury in this case, and we do not think such error was committed by the court as requires a reversal." We do not mean, however, to be understood as holding that the injury must in every case be shown. Among the cases referred to in the Lenert case on motion for rehearing and probably the earliest case involving the construction of these statutes is the case of Williams v. State, 24 Texas Crim. App., 32. In that case the jury commission had been appointed by the district judge of Comanche County to select jurors for the succeeding term. At the date of the appointment the term of the court for Comanche County was limited to three weeks. By the time, however, the next term of court came around, the Legislature had extended the term of court one week, making the term of court in that county four weeks. Quite naturally no jury had been selected for the fourth week. Williams' case came on for trial on the fourth and last week of court. He objected to going to trial before a jury drawn by the commissioners of the then present term of court and claimed his right to be tried by a jury selected under the literal terms of the statute. In passing upon this question Judge White says: "It appears from the record that at the last previous term of the court the jury

commissioners had only drawn and selected jurors for three weeks of the next term. At the time they acted, the length of the term of the District Court of Comanche County, fixed by law, was three weeks. After adjournment of that term, the Legislature had lengthened the term to four weeks. When the court convened the jury commissioners of the then present term were required to draw and select jurors for the fourth week of said term. The jury in this case was composed of the jurymen thus selected and drawn, and defendant challenged the array because they had been selected by the jury commissioners of the present and not of the previous term. This challenge was rightly overruled by the court. The mode and manner of selecting jurors for said fourth week was in conformity with law. (Elkins v. State, 1 Texas Crim. App., 539; Shackelford v. State, 2 Texas Crim. App., 385; O'Bryan v. State, 12 Texas Crim. App., 118.) No challenge to the array of jurors selected by jury commissioners can be entertained.

"We are of opinion, independently of the cases cited, that authority for the court's action in the premises might well be predicated upon the spirit and intent of the provisions of article 3022 (3150) of the Revised Statutes. These provisions are not in conflict with article 658, Code of Criminal Procedure, but leave it discretionary with the court, "when it may deem necessary," to appoint jury commissioners where they have not been appointed in time to make selection of jurymen; and no good reason is seen why the court cannot as was done, utilize for that purpose the services of the commissioners already appointed to select for the next term of court."

The case of Hurt v. State, 51 Texas Crim. Rep., 338, 101 S. W. Rep., 806, in substance recognizes the rule that where the jury commissioners fail to select a jury for the ensuing term through the inadvertent oversight of the court, the court was authorized by such fact to direct the sheriff to summon a designated number of persons from whom a jury might be selected, and distinguishes that case from the case of White v. State, 45 Texas Crim. Rep., 602; 78 S. W. Rep., 1066, where the court had peremptorily for many terms of the court absolutely refused to organize a jury commission at all. Now, applying these principles to the case at bar. A jury commission had been appointed and had selected a jury for such length of time as in the judgment of the court would probably be necessary for the orderly and proper disposition and trial of the business coming before it. However, as appears from the statement of the court, later in the term it appeared that the business then on hand could not be, as it had not been, disposed of. The case stood for trial. The question was whether the court should be powerless and impotent to try the cause or whether of necessity under the terms of the articles above quoted, the court must sit idly by and wait until the next succeeding term of court? We cannot believe that the law intended that in every case and at all events an appellant could only be tried by a jury selected by a jury commission. We think as appears from the record here that

appellant was without just ground to object to a trial before a jury summoned by the sheriff and we are the more inclined to so hold in this case, because no objections were raised to the jurors summoned, nor is there any suggestion in the record, that they were other than fair jurors alike to the State and the appellant.

4. There are some other questions raised in the record which relate mainly to the charge of the court and special charges requested by counsel for appellant. We think the charge of the court is sufficient and the special charges asked by counsel were in effect charges upon the weight of the evidence.

For the grounds stated above, the case is reversed and the cause remanded.

*Reversed and remanded.*